All right, so let's call our next case, it's two cases, United States of America v. Geraldino Aracena and United States v. Donate Cardona. I'm sorry if I butchered those names, but the numbers are 17-1142 and 17-1178. And good morning again, Your Honors. Just on behalf of Mr. Geraldino Aracena, given the splitting of the time, I'm not reserving any time for rebuttal. Your Honors, my case presents two issues, the Section 1614 issue and what I call the Article 3 issue. As to the Section 1614 issue, the government's position and the District Court's position has taken what I consider to be initially an Appointments Clause issue, the Appointments Clause prior, into an Article 3 oven. The problem being is that the District Court's instruction of Section 1614, while not unreasonable when you look at the statute in isolation, it does say that until a successor is chosen. The District Court's opinion says this is, in essence, not a finite term, an infinite term. That is problematic because only Article 3 judges... All right, but you've just criticized the opinion but not the judgment reached. And you've got to reverse the judgment, right? Because we can affirm for any reason supported by the record. That is true, Judge Hardiman. And I would submit that whether you look at an Appointments Clause violation, which is structural in nature, or an Article 3 problem, which is also structural in nature, either way, I'm entitled to the relief that I ask for. And the best case that I have... How can you say it's infinite, though? I really struggle with that argument. You say it's, in essence, ad infinitum that he's appointed, right? Sure. Tomorrow, a successor could be appointed. That is true. So it's not infinite. But likewise, tomorrow, a successor might not be appointed, and might not be appointed, and might not be appointed. Judge Gomez, from my count, has already 35% passed his term. At some point, you have to look at it like, well, where does it end? It ends when Congress says it ends, and Congress has told us his term ends when a successor is appointed. No. Congress does not get to dictate that. Congress can define and mold the statute, but Congress can't do something that would be in violation of the Constitution. All right, all right. Fine. But let's take this in order, then. What I hear you saying, Mr. DiRusso, is Congress has provided for a term beyond 10 years, because of the language, until the successor is appointed, but Congress acted illegally in so doing, because it violates separation of powers? Exactly. Just along the lines of, like, in Stern v. Marshall, where, to me, that's my best case, where Congress fixed the Bankruptcy Act and allowed for, I guess, a counterclaim on a non-court proceeding to be adjudicated by a bankruptcy judge, but that was problematic because it violated Article III. Likewise here, to allow an Article IV judge to have an unlimited term, and the term is going on to this day. But Stern wasn't about length of term, was it? No, it was not. It was about capacity to hear certain issues. It was. And particularly, as I recall, the jury trial, right? It may have been. Which is, you know, a constitutional right. What constitutional right do litigants in the Virgin Islands have to have their case heard by someone who's here less than 10 years and a day? It just seems like a consummately statutory question for Congress, as opposed to a constitutional matter. What's your constitutional hook to say Congress could not allow this term to continue beyond 10 years? I would submit that that's the Appointments Clause argument. Just state what it is. I'm just a little unclear as to exactly how it would violate the Appointments Clause. He was validly appointed at one time. You have to concede that, right? Absolutely. Okay. But the appropriate term is 10 years. It's the until successor is chosen portion that I believe violates the Appointments Clause. Because then if Judge Gomez fulfilled this term 10 years and that was it, not a problem. If his term goes on ad infinitum, which it does to this day, I don't believe that anyone could argue that the Congress has appointed an individual with the advice and consent of the Senate to an infinite term. And so if you have that infinite term, if that was Congress's intent, I believe that that violates Article 3. But I think Congress recognized that the appointments process can be slow, cumbersome. And isn't that what they were doing with this statute, recognizing that they might not have a successor in place at the end of the 10 years? Judge, yes. And let me put it, last night I was thinking about this case and I realized the ask, my ask, is substantial. And I realized that if I was sitting and the roles were reversed, I would have a little bit of discomfort as well. But I draw an analogy to the Supreme Court's decision in Northern Pipeline. Northern Pipeline, they were interpreting the 78 Bankruptcy Act. They found it to be unconstitutional. They declared it as such and stayed the outcome of their decision in Northern Pipeline for Congress to, in essence, fix the problem. And then extended that, the order staying the effect of Northern Pipeline a couple times. I would submit for this case, it only is going to affect a few number of my clients. All the rest is going to be up on plain error, so it's not going to be problematic. This Court could, in essence, tell Congress they need to do something by a date certain. And perhaps if it's not done just like Northern Pipeline, it can be extended. And that the result is not going to be the floodgates of litigation. It's not going to be problematic. It's not going to upset the constitutional balance that much. Are you suggesting we tell Congress you've got to do something and in the meantime Judge Gomez can't sit? No. I would submit that this Court could say that you need to fix the problem and that you have until X date to fix the problem just like the Supreme Court did in Northern Pipeline. It's going to cause a real backlog here, isn't it? You'll have to get a second job. I don't think it'll be that problematic, Judge. But turning briefly to... There's only two district judges here, right? There are only two, but there can or have been numerous instances, such as Judge Sanchez, Judge Savage, Judge Barrow coming down, sitting by designation. So I don't believe that that in and of itself is problematic. And I'll use that as a segue to turn to my Article III issue. My Article III-ish issue is that Article III, Section 2 makes clear that when the United States is a party, Article III needs to handle those cases. And the Glidden case, which Judge Harlan wrote, goes on at length as to why Cantor, the 1928 decision from Chief Justice Marshall, why Cantor is not controlling under certain circumstances. Judges, it is almost 2019. The Virgin Islands has been a United States territory for over 100 years at this point. At some point, you have to ask yourself, is the transitory nature that informed all the decisions of Cantor, of those territory clauses, does something change? And I would submit after 100 years, things do change. The Supreme Court would have to do that, though. I believe that the language in Glidden is sufficiently clear, along with footnote 19 of Glidden, that it talked about, have things changed? Were the animating principles of Cantor no longer in place so that a court in the first instance could at least opine on it? So if this court were to have some discomfort as to whether Cantor is still controlling, I would submit, at a minimum, this court should identify the issue, for the Supreme Court to say, hey, this is a problem, the Supreme Court needs to take a look at it, because all those animating reasons, and I understand under Agostini v. Felton, this court can't overrule a decision of the Supreme Court, or can't even by negative implication if subsequent Supreme Court decisions have undermined the legal rationale. I understand that. But at the same time, this court, as an expositor of the Constitution, is able to say, wait a minute, based upon the Glidden decision, based upon that footnote 19 of Glidden, we've got a real problem here, and that the text of Article 3, Section 2 is clear. The text, which should control the Constitution, the text says where the United States is a party, it should be adjudicated in front of an Article 3 court. So I would submit that for those reasons, this court's decision from Cantil does not control, and at a minimum, this court perhaps might be able to issue an opinion, I believe it would be, especially concurring, or something along those lines.  Thank you, Your Honors. Good morning, Your Honors. May it please the Court, my name is Jeanine Rodriguez. On behalf of the appellant, Ricardo Donate Cardona, I would like to reserve three minutes for rebuttal. That will be granted. Your Honor, I represent the appellant in his request that this court vacate the lower court's judgment and remand for a new trial. The appellant makes three issues which would warrant a new trial, and one which would require resentencing. I would like to focus, at this point, on the Jenks violation, the Brady, and the Bull Cumming issues. Where's the prejudice in Jenks? As I read the record, the notes were eventually turned over, and the witnesses were held, I shouldn't say held, they weren't released until everybody agreed they could be released. I think it comes down to an underlying Brady violation, which arises within the notes. So if we look, there's a second CI, which to this date, as we're arguing this, was never disclosed. That CI was used to introduce the millions of dollars in the Puerto Rico case. The defense in the St. Thomas case never had an opportunity to cross-examine, to investigate, to look into that CI, never had an opportunity to have any dealings with that CI. Nonetheless, that CI's testimony was used to bring in funds which were used to sentence my client. So the defendant was absolutely prejudiced because of the underlying Brady violation. I think Jenks, in and of itself, had the reports and the notes matched entirely. They had an opportunity to cross-examine. So there's no Jenks violation? It's a Brady violation? Well, there's a Jenks violation. I think there's an underlying, within the Jenks violation, we discover a Brady violation. There's a Jenks violation at the point that on direct, the defense attorneys bring up Jenks. On cross is when there's the finding of additional reports. So they didn't disclose everything at the point of following the defense request after the direct examination. It wasn't until the cross-examination that the defense had to re-argue Jenks, at which point additional records were disclosed. And within that secondary disclosure, we find the Brady violation, the underlying Brady violation. So there's absolutely prejudice. So there's two standards, whether it's prejudicial and less than likely harmless. I think we can definitely agree that it's not less than likely harmless at the point that, again, the defense doesn't have an opportunity to look into the CI, and nonetheless the funds are used against this client. So if those funds and that CI and everything pertaining to that CI had no bearing on Mr. Donate Cardona, then perhaps we wouldn't be having this conversation. How were the funds, as opposed to the drugs, used against your client? Well, the funds and that CI, that testimony was used in the Puerto Rico case to bring in the $1.7 million, if I'm not mistaken. My client never had an opportunity to cross-examine that confidential informant. My client to this day has no information, no disclosure, nothing. That's something that could happen at the point that, yes, Agent Hill was left there. Yes, Agent Hill had an opportunity to be recrossed, and the defense had an opportunity to recross Agent Hill and Agent Day. However, the information pertaining to that CI, which was learned of mid-trial, none of that could be tackled at that point. So it was definitely prejudicial to the defendant at that point, where the defense strategy was compromised. They were not able to bring that up in the middle of trial. That CI has yet to be disclosed, obviously never will. So my client had no opportunity to tackle that information, which was obviously prejudicial, because the likelihood that the trial outcome would have been different is substantial. What's your response to the government's argument in its brief at page 13 that defendants all indicated to the court that the Jenks issue had been resolved and that after testifying, Agent Hill could be released as a witness? Well, again, Agent Hill could be released as a witness because at that point the prejudice to the findings in those reports, at that point the defense was unable to tackle anything further. They had reserved their Jenks. But is it correct to say that the defendants indicated the Jenks issue had been resolved? I don't think that's correct based on the record, if I may. Was there also a specific request for this Brady information once it was made apparent to the defense? Yes, if I may. On the transcript, page 241, docket entry 221, they specifically, following the objections, they renewed the objections and they specifically addressed the issue of the fact that no information had been provided regarding the CI and that they had just discovered the existence of the CI, let alone any information pertaining to the CI. So this was, again, I remind the court, the reason this is a Jenks violation is this wasn't brought up, these reports were not brought up following the first Jenks request after the direct examination. This was brought up following the cross-examination. There was a renewed Jenks objection and the request that the testimony be stricken. So you're saying the Jenks violation is that the notes of this other CI or whatever 302s maybe were not turned over? No, the Jenks violation is that the testimony of Agents Hill and Day testify. During that testimony, following the testimony prior to cross-examination, the defense requests the notes that Agents Hill and Day referenced. They were eventually turned over. They were turned over. Then cross-examination takes place following a review of those notes and it comes to the defense's attention that there are additional notes that had not been provided. The court admonishes the government and tells the government, this was in your possession. The government's response was, well, it was in the possession of Puerto Rico, not in our possession. And the court at that point says, we're under one sovereign, this is one government. So the good faith exception at that point, we would argue, is moot because we are one government, one sovereign, and it was in their possession the entire time. They had just not turned it over. But what was done by the defense to seek further discovery at that time? I mean, was it motion for continuance, you know, motion to pursue the notes? The defense at that point requested the notes. The government said that they had requested them. The government went and then at that point sought the notes and produced them to the defense. However, in the finding of those notes. Well, it sounds like a timing issue more than a production issue to Judge Restrepo's question. I mean, it's just unusual. Typical Jenks argument that's a good one is the material's not produced. These were produced. Perhaps, as I understand your argument, in an untimely way. The problem here is that the government only produces it post-cross-examination. Right, so it's a timing issue. You're saying that the timing of the production prejudiced your client, deprived your client of a fair trial or due process? All of the above. And in and of itself is the Jenks violation at the point that the court is there required, the government would be required to produce the documents post the direct examination upon request of the defense. They failed to do so. They produced some. They failed to produce all of the documents requested. During cross-examination, they renew the Jenks objection. The government says it's not in our possession. The defense at that point has to, again, renew the Jenks objection. The government says, well, it's in the possession of Puerto Rico, hence we didn't provide it. So, yes, they ultimately do provide this information post-cross-examination. And, again, it contains information which is tantamount to a Brady violation because there's information pertaining to a CI, which the defense was then unable to do anything with in the midst of trial. So there's a distinction between Jenks and Brady here because under Jenks, they were released, the witnesses were released without objection from the defense post after they produced these notes and they were subject to cross-examination. All the witnesses were released. Is it your position then that although the timing was not good, Jenks had been satisfied, but there was an underlying Brady violation? Well, Jenks is not satisfied at the point that it's prejudicial and not harmless. So the standard would be that it's excused only where it is perfectly clear that the defense was not prejudiced. That's Snow, 537 F. 2nd, 1166. And the failure to disclose material evidence is only excusable when it's not prejudicial. So I would argue and I would represent... Those are failure to disclose cases, not delayed disclosure cases. At the point that they're disclosing... Were they disclosed late in those cases or not disclosed at all? It was not disclosed. However, at the point that it's being disclosed post cross-examination and the information there is not something that the defense can handle... Right, and if the witnesses are gone or the defense can't handle it, then it's plainly prejudicial. But the record here seems to suggest that the witnesses were still available. There could have been a pause, a reset, and then proceed, or perhaps continuance if it puts you in an unfair position. The problem is that at that point it's bringing information of a material witness which was not disclosed at any point prior to... Now you're talking about the CI. Correct. That's the Brady issue. Correct. Was there a motion made at that point, hey judge, in the middle of pursuing our Jenks objection, our Jenks argument, we have now learned of a Brady violation and we need to look into this. They do bring up, again at 221 in the transcript, they do bring up the fact that there is a Brady violation and that there is a second CI that had not been disclosed to the defense. And the judge's response on that is what? That they had an opportunity to recross Hill. So again, I don't think that the opportunity to recross Hill satisfies... Because you wanted the CI, the still undisclosed CI. The problem is that I think it's not a matter that we wanted. I think it does prejudice the defense and I think that it's reasonable to say that the trial's outcome would have been different with the disclosure of that CI. But Brady is inherently exculpatory material. And so maybe if you had real Brady documents, yeah, the result would have been different. But what is exculpatory about these materials? You don't know. We don't know because we don't have that CI. Perhaps that CI, in the example of the Brumell-Alvarez case where the CI was incredibly problematic and the reports are explained as such and it was prejudicial, where those reports were not disclosed because had the defense had an opportunity to look into the CI, they would have been able to cross-examine the CI and it would have been possible, the court found that it would have been possible for the jury to think that CI was not credible and that the information provided by that CI was not credible. In this case, we don't know. Perhaps that CI had information that a jury would not have found credible and would have questioned the entire operation based on that CI's testimony. And again, that CI's testimony had to do with a substantial amount of money, which was in large part the cause of a number of the strict sentencing. So I think had we don't know, and that's part of the problem, but there is a reasonable possibility that that CI's testimony would have been prejudicial. How can you say that if in the same sentence you're saying you don't know what was there? I mean, that's a conflict there, don't you think? Well, I think that at the point that that CI's role is so important as to such a big part of this case, then I think the defense is prejudiced, period, end of story, because they don't have an opportunity to cross-examine that CI. So we would present to the court that that was that reversible error, that it needs to be remanded. It needs to be vacated and remanded. Thank you, Your Honors. Thank you, counsel. It's okay. Thank you. Good morning. Good morning. If it may please the Court, my name is Sigurtao Spradi on behalf of the United States C.A.P.L.E. in this matter. We stand before you and ask that the district court's judgments be affirmed by Your Honors, that there was no error committed by the district court and that the evidence presented at trial supports the findings of guilt during that jury trial. Let's start with this Brady issue. Was there a Brady violation here? Because that's not on the court and it's really on the government. No, Your Honor, there wasn't. The reports were not exculpatory under Rule 16. The reports are not discoverable. Again, they were not exculpatory to the defendants. They were provided pursuant to questionings on cross-examination as a jinx material. There was a finding by the district court at supplemental page 235 that the court had reviewed the documents and was satisfied that the government had produced the documents and there was no further jinx inquiry that needed to be done regarding the documents of Agent Hill. So the court reviewed the documents and found no Brady violation. This is a distinction between Brady and jinx. That is correct, Your Honor. There was no issue of Brady brought up during trial for the district court to address. It was strictly jinx that the appellant was arguing with the co-conspirators in that matter. The court reviewed the documents that were provided to the defense. Agent Hill was not excused for a period of three days to allow counsels to cross-examine him, and he was subject to the cross-examination after the reports were provided to the court and to the appellant. Was there a Brady request made at any point during this trial tethered to these late produced notes? Not that I recall, Your Honor. The reference on the record, I believe, again, was for jinx violations. Was that resolved? Your same question I asked the opposing counsel. You say defendants indicated the jinx issue had been resolved, and then you cite Appendix 119 of 23. Opposing counsel says that's not quite true. What's your response? Your Honor, the court made an inquiry. One of the things that our district court does is ask each party individually. On those pages of the appendix, Appellant Cardona specifically says he does not need Agent Hill any further, and then they indicated that the jinx issue had been resolved and he could be released as a witness. As further indicated, too, as far as Agent Day's notes, those were provided as well, and it was consistent with his testimony of his observations as well as what was contained in the case agent report in that matter. And Agent Day as well was not released and subject to cross-examination after the initial cross-examination, which parties were allowed to avail themselves of. He was, in fact, on Supplemental 132 and 134 cross-examined again for a second time by Appellant Cardona regarding his notes. I just want to be clear. The government's telling us that there was no Brady violation, that all exculpatory evidence relevant to this case was turned over. Yes, Your Honor, and that was not raised before the district court judge. It was just a matter of whether or not there was a violation of jinx for failure to formally disclose. I understand that, but regardless of whether it's raised, it's incumbent on you folks to turn over exculpatory material, right? There was no Brady violation, Your Honor. Maybe you could... I'm sorry, are you still addressing that issue? No, Your Honor. I thought you might move on to the issues maybe Mr. DeRuzzo raised. Yes, Your Honor. With regards to the appointment clause, as my previous counsel raised, this has been already addressed by the courts in United States v. Liriano-Castillo. There is no appointment clause violation in the fact that counsel has yet to show this court or any court that a successor has been chosen and qualified, and that our district court judge is sitting in properly to hear cases here in the Virgin Islands. How do you respond to, it's a hard one, but what if Congress and the President and Congress never act? Doesn't this person become a de facto Article III judge then? And then there still would be no violation. There is nothing that is written that says that he's going to sit infinitely. As Your Honors have already pointed out, he could be replaced tomorrow. There is nothing that shows that someone has been chosen and qualified and that our district court judge has refused to step down. And there's nothing that shows that there's been no effort for someone to be chosen and qualified. So there is no violation of the appointment clause by our district court judge sitting and hearing cases here in the Virgin Islands. As far as the jurisdiction of a court, again, in Liberiano-Castillo, the court has properly addressed that, and not only in Castillo but in United States v. Fagan. And the courts have held that the jurisdiction of cases arising from the Virgin Islands is not subject to the requirements of Article III. And this court recognizes that because our jurisdiction is from Article IV and Section III of the United States Constitution, there is jurisdiction here, violations of the federal law here. So we ask that for our SENA that his judgment be affirmed. Since he raised those two issues that were not raised before the district court. And in reviewing that, your honors would be reviewing it for plain error. And I submit that the district court did not commit plain error by presiding over the trial of Mr. Aracena, nor the trial of Mr. Cardona. If I could proceed to the challenge of Agent Foreman's testimony as a violation of the Confrontation Clause. I would submit that there was no violation of the Confrontation Clause or a Bull Cummings violation. Agent Foreman was- An independent investigation, right? Yes, he did, your honor. And I think the record supports that in his direct testimony at Supplement 250, 253, and 262 and 263. That he was consistent. He did initially, when he was reviewing or preparing to examine the firearms, did rely on Special Agent Waters' report. But then he independently, physically examined those firearms. And that was, he testified to, he did approximately April 1st of 2016. So regardless of what his initial preparation was for repairing his own opinion as to where or what the firearms consisted of and where they were manufactured, he himself physically examined those items. And also to note that Special Agent Foreman was not tendered to the court as an expert. A person, a layperson, can give that opinion as to where a firearm originated from or was manufactured. And if there was any error, we'd say the United States would argue it was harmless error because after Agent Foreman's testimony, Detective Mark Joseph, also a former Virgin Islands Police Department detective and a TFO for the Drug Enforcement Administration, testified about where the firearms were manufactured. And in his career as a law enforcement agent, firearms are not manufactured in the Virgin Islands. Both of these individuals were available for cross-examination. Therefore, there was no confrontation violation. And because Agent Foreman was not submitted as an expert, there is no Bill Cummings violation either. So based on that, we ask that you affirm Cardona's conviction in this matter. If I may proceed to the multiple conspiracy or would Your Honors carry it for me? You've got time if you'd like. You're free to do that. Okay. I'll proceed to the multiple conspiracy jury instruction. The evidence trial supports that there was a single conspiracy in this matter. Therefore, there was no abuse of discretion in the district court's denial of a multiple jury or multiple conspiracy jury instruction. The evidence supports that there was a single negotiation. That negotiation started with our confidential source and other members of the conspiracy in Puerto Rico, where Appellant Aracena and Appellant Cardona were present during those negotiations. And the testimony supports that it initially started at a negotiation for 75 kilos at approximately $15,000 per kilo. It eventually went higher, according to the testimony of the confidential source. Ultimately, they agreed upon 150 kilos at approximately $13,000 per kilo. And that negotiation was one single negotiation, which was the start of the single conspiracy. Now, there was also other discussions and meetings between the confidential source and the appellants Cardona and Aracena in Puerto Rico. And during those meetings, there was never a renegotiation of how many kilos or what the price was going to be paid. It was just talking about logistics. Appellant Cardona and Appellant Aracena showed the confidential source a boat. They went out on the boat and talked about how the drugs would be moved from St. Thomas to Puerto Rico. Appellant Cardona showed them a hidden compartment that he himself had paid for to have made into the boat, that that boat was going to come to St. Thomas with three firearms and other members of the conspiracy to pick up the cocaine and arrange for the final payment of the money here in St. Thomas. So it is clear there was one single continuous conspiracy. The fact that there may have been separate, say, sub- These are different overt acts in the conspiracy. Yes, they are. But they are overt acts that support a single conspiracy and ongoing overlap. So the fact that it may have started in Puerto Rico and involved a couple individuals there who then did not ultimately come to St. Thomas does not negate the fact that there is still just one conspiracy in this matter. So we ask that you find that the district court's denial of the request for multiple jury instruction be denied. As far as the court, as the sentencing of Appellant Cardona, the district court probably found that 150 kilograms was the appropriate weight for the sentencing guidelines and for their reasoning for sentencing. And in this matter at sentencing, the United States offered to the court the trial testimony as the court. The district court was familiar with the matter as the district court judge was one that presided over the trial. However, we did offer to the court the trial transcript and the testimonies of the witnesses that supported that 150 kilograms was what was negotiated and agreed on by the members of the conspiracy and Appellant Cardona. And in that sentencing hearing, the court found, by a preponderance of the evidence, that the United States had shown and that what happened between Appellant Cardona and the other members of the conspiracy and the confidential source supported a finding that this matter was for 150 kilos and the appropriate sentencing guidelines for sentencing Appellant Cardona. I see my time is almost up. If your honors have any questions. I think we're all set, counsel. Thank you so much. I ask that you, on behalf of the United States, that you affirm the convictions of Aracena and Cardona. Thank you. Thank you, counsel. Your honors, I may have to use the court. With regard to Agent Foreman's testimony, he prepared the report based on Agent Waters' testimony. He did his own investigation, didn't he? He did, but he says at page 350 that while his report is dated February 2016, he didn't have an opportunity to inspect the weapons until April. So it's impossible that his report, which was prepared February 2016, was based on his own examination when his own examination took place in April of 2016. So that's fodder for cross-examination, right? At the point, though, that his report is based on another agent's report, there is a bull-cumming violation. Was the report offered into evidence? His testimony was based off of... Was the report offered into evidence? Agent Waters' report? Yes. No, it was not. All right. Let's start with Melendez-Diaz. Yes. What was the constitutional problem there? What was the testimonial evidence in that case? The court in that case refused to create a forensic exception. Well, wait, just... What was the... Stay with me. What was the evidence offered in Melendez-Diaz that was deemed... The report. The report, right? Offered in evidence. And then in bull-cumming, there's a follow-on case, right? Because they tried to put in a witness. They put in another report in bull-cumming, right? And they put in a witness who was just the supervisor, correct? Correct. We would contend that the agent foreman was used as a surrogate to essentially bring in Agent Waters' report. While I... All right. But that puts it on a very factually different posture than Melendez-Diaz, bull-cumming, or Williams v. Illinois, right? Here we've got a person testifying, this gun traveled in interstate commerce, right? That's how they tried to prove the essential element of their case, that the gun traveled in interstate commerce, through the verbal testimony of Agent Foreman, correct? Who is essentially acting as a surrogate for Agent Waters' report. It would be our position. Because you had every... Because he repeated it, that's his own research. All right. Right. But I think that's a good argument, but I think that goes to wait, right? Because my point is, you had every opportunity to confront Foreman. He was the witness against you, and you could cross-examine him as much as you wanted, right? At the point, though, that he's only testifying as to Agent Waters' findings, given that he doesn't conduct his own... But is that what he said? Did he testify? Well, I can't tell you whether this traveled in interstate commerce, but my colleague, Waters, did this report, and as I look at this report, this report says it traveled in interstate commerce. That would be a real problem, but that's not what happened here, right? He testifies that he did base his report on Agent Waters' report. He testifies to that at page 349. And then he, again, confirms that his report, which is dated February 2016, is done. It predates his examination, so his examination isn't done until April. That report was submitted... That report's probably not worth that much, right? And you could undermine his credibility by cross-examining him with those arguments you just made, which I think are powerful. But when he says, look, I looked at this in April, he's done his own superseding investigation, hasn't he? At the point that you asked if the report had been submitted, if Agent Waters' report had been submitted, our position is via... Right, had it been put into evidence. Correct. Because the whole point about the Confrontation Clause is you have a right to confront witnesses against you, right? And if a document's not offered into evidence, then the document isn't the witness. The human being is the witness. Absolutely. While the report was... Agent Waters' report was not... In effect, it was at the point that Agent Forman's report is solely based off of Agent Waters' report, as he testifies himself. It is not until... But was his testimony that this gun traveled in interstate commerce based solely upon his report? Forman's report? His report. Or was it based also on his own investigation? His report? No, his testimony. His testimony, no. He testifies that the gun traveled in interstate commerce, right? He does. And as I understand it, your argument is that testimony was problematic under the Confrontation Clause because he wrote a report, Forman wrote a report that relied on the Waters' report. Essentially... And I'm accepting all of that as a strong argument, but then I'm asking you, isn't it all sort of beside the point because Forman also testified that he did his own investigation and that investigation is what led him to testify that the gun traveled in interstate commerce? It still doesn't resolve the issue that essentially Agent Waters' report was introduced... It's like a fruit-of-the-poisonous-tree argument almost you're making, that the Waters' report polluted everything that Forman did after that. To some degree, and that it does... Again, they used Forman as a surrogate to get... Was Waters' report introduced in and of itself? No, but it was introduced via surrogate, which was Agent Forman. Okay. I'm afraid your time is up, Counsel. Thank you, Your Honors. Thank you. And excellent job. We'll take both cases under advisement.